UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Thomas Norring,

            Plaintiff,

                                          Civ. No. 15-3715 (RHK/KMM)

v.                                         **ORDER**

Pace Industries Castings, LLC, *et al.*,

            Defendants.

---

Plaintiff Thomas Norring worked for Defendant Pace Industries, Inc. ("Pace")[1] as an Information Technology Technician from 2011 to 2015. He alleges in this action that Pace interfered with his rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and terminated his employment in violation of the statute. Pace has counterclaimed, alleging that Norring hacked into its computer system following his discharge, deleted certain files, and eventually shut down its phone and computer networks, in violation of the Computer Fraud and Abuse Act of 1986 ("CFAA"), 18 U.S.C. § 1030.[2] It also brings state-law counterclaims for conversion and

---

[1] Norring has sued three entities: Pace Industries Castings, LLC; Pace Industries, Inc.; and Pace Industries, LLC. The parties have not clearly explained how these entities interrelate and simply lump all three together as "Pace" or the "Pace Defendants." The Court will follow their lead and refer to Defendants in this Order using the singular "Pace." It notes, however, that Defendants asserted in their Counterclaims that Norring was employed by Pace Industries, Inc. (see Counterclaims ¶ 1), and yet Joyce Clark, Norring's supervisor, testified in her deposition that Norring was actually employed by Pace Industries, LLC (Clark Dep. at 7).

[2] Although Pace identifies 18 U.S.C. § 1030 as the statute under which it brings this counterclaim, it incorrectly labels that statute as the "Computer Damages Act." In actuality, Congress authorized a civil action for computer hacking as part of the CFAA, which comprised a

civil theft relating to Norring's alleged taking of a laptop computer and computer files belonging to Pace.

Discovery is now complete, and the parties have cross-moved for partial summary judgment. Specifically, Pace seeks summary judgment on each of Norring's claims, while Norring seeks summary judgment on Pace's CFAA counterclaim. For the reasons that follow, Pace's Motion will be granted in part and denied in part, and Norring's Motion will be denied.[3]

Pace's Motion. Norring's first cause of action is an "entitlement" claim (previously known as an "interference" claim) under the rubric set forth in Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996 (8th Cir. 2012). Such a claim arises when "an employee claims the denial of a benefit to which he is entitled" under the FMLA. Id. at 1005; see also 29 U.S.C. § 2615(a)(1) (making it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" rights under the FMLA). Among other things, the FMLA entitles an employee with a "serious health condition" to take up to 12 weeks of leave in a 12-month period. 29 U.S.C. § 2612(a)(1).

Here, it is undisputed that during his tenure with Pace, Norring was approved to take intermittent FMLA leave due to a back condition. He argues, however, that Pace

---

number of amendments to the Comprehensive Crime Control Act of 1984. See Pub. L. 99-474, 100 Stat. 1213 (1986).

[3] In considering the Motions, the Court has viewed the record in the light most favorable to Pace when considering Norring's Motion, and in the light most favorable to Norring when considering Pace's Motion. Summary judgment is proper if the record demonstrates there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Seaworth v. Messerli, Civ. No. 09-3437, 2010 WL 3613821, at *3 (D. Minn. Sept. 7, 2010) (Kyle, J.), aff'd, 414 F. App'x 882 (8th Cir. 2011) (*per curiam*).

interfered with his FMLA rights by assessing him points under its "no-fault" attendance policy on days he was tardy or missed work on account of his back condition in late 2014 and 2015. (See Pl. Mem. in Opp'n at 18-20.) But even assuming that were true, he cannot point to any tangible impact the assessment of points had on his employment. There is no evidence, for example, that Pace disciplined him, docked his pay, suspended him, or otherwise took adverse action against him due to points assessed on days he now claims FMLA protection. This proves fatal, because a plaintiff asserting an entitlement claim must show he was prejudiced by the defendant's conduct. Pulczinski, 691 F.3d at 1006 ("The FMLA 'provides no relief unless the employee has been prejudiced by the violation.'") (quoting Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)).

Norring responds that the points assessed against him "negatively affected [his 2015] raise by approximately 10 percent." (Pl. Mem. in Opp'n at 20.) But in support, he cites only his own deposition testimony, in which he *theorized* he would have been entitled to a greater raise without the assessment of points. (Norring Dep. at 201 ("Q: And so how much was your raise in 2015? A: I don't recall the exact amount. I want to say maybe 3 or 5 percent. Q: And you think it would have gone up to 10 percent? A: I believe it *could* have gone up to 10 or either 15.") (emphasis added).) Such supposition is insufficient to overcome summary judgment, e.g., Al-Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1036 (8th Cir. 2005) ("Evidence, not contentions, avoids summary judgment.") (citation omitted), particularly where the record reveals that the raise Norring

received in 2015 was consistent with raises he had received each year prior (see First Clark Aff. (Doc. 39) Exs. U-W).[4] With no evidence of prejudice, this claim fails.

However, the Court reaches a different conclusion with respect to Norring's second claim, an FMLA "discrimination" claim. Pulczinski, 691 F.3d at 1006. Such a claim arises "when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA." Id. Here, Norring alleges Pace engaged in discrimination when it terminated his employment because he took FMLA leave. The claim is analyzed under the familiar McDonnell Douglas burden-shifting framework. Id. at 1007.[5] Under that framework, Norring must first establish a prima facie case by showing (1) he engaged in protected activity under the FMLA, (2) he suffered an adverse employment action, and (3) a causal connection existed between the two. Id. If he does so, the burden shifts to Pace to articulate a legitimate, non-discriminatory reason for its actions. Ebersole v. Novo Nordisk, Inc., 758 F.3d 917, 924 (8th Cir. 2014). Norring must then identify evidence in the record sufficient to create a genuine issue that Pace's proffered reason is a pretext for discrimination. Id.

---

[4] Norring suggests that his earlier raises also were negatively impacted by points he was "improperly" assessed, but he has only identified seven dates in late 2014 and 2015 on which he claims he was wrongfully given points under the no-fault attendance policy. (See Dwyer Aff. Ex. EE at 5.)

[5] A different analysis applies when an employee proffers "direct evidence" of discrimination. See, e.g., Brown v. City of Jacksonville, 711 F.3d 883, 891 (8th Cir. 2013). Norring suggests such evidence exists here (see Pl. Mem. in Opp'n at 20-21), but he cites nothing showing a "specific link" between the exercise of his FMLA rights and his discharge, Ebersole v. Novo Nordisk, Inc., 758 F.3d 917, 924 (8th Cir. 2014).

Here, Norring has stated a prima face case,[6] and Pace responds that it terminated his employment for insubordination and his ongoing failure to perform work assignments. According to the company, this "came to a head" on June 16, 2015, when his supervisor, Joyce Clark, told him to remove a hat he was wearing in the office, per Pace's dress code,[7] and Norring responded that he "didn't care" and would not remove the hat. (Def. Mem. in Supp. at 30-31.) Norring was fired later that day by Clark and her boss, Jeff Rivers. (See Killeen Dep. at 10; Clark Dep. at 41.)

Norring can show that Pace's proffered reason is pretext by, among other things, "demonstrating that [Pace's] proffered reason has no basis in fact, that [he] received a favorable review shortly before he was terminated, that similarly situated employees who did not engage in the protected activity were treated more leniently, that [Pace] changed its explanation for why it fired [him], or that [Pace] deviated from its policies." Ebersole, 758 F.3d at 925 (citation omitted). In the Court's view, there is sufficient evidence – indeed, *significant* evidence – in the record to meet *all* of these items and, hence, Pace is not entitled to summary judgment on this claim:

- No basis in fact: Pace's claim of insubordination and failure to perform work assignments is belied by every single one of Norring's annual reviews, all of which

---

[6] Pace concedes that Norring engaged in protected activity by taking FMLA leave and suffered an adverse employment action when his employment was terminated. It argues, however, that he cannot show the causal connection necessary for the final element of the prima facie case. For the reasons stated below, the Court finds ample evidence that the company's proffered reason for terminating his employment is pretextual, and such evidence, "normally considered at step three of the McDonnell Douglas analysis, can satisfy the [third] element of the prima facie case." Lake v. Yellow Transp., Inc., 596 F.3d 871, 874 (8th Cir. 2010).

[7] The dress code permits employees to wear hats in the manufacturing potion of Pace's facility, but not in the office space.

praise his work ethic and communication skills. (See, e.g., First Clark Aff. Ex. U ("Completes projects and uses time wisely. . . . Keeps himself busy and handles spikes of issues in a timely manner."); id. Ex. V ("Good job completing projects in a timely manner. . . . Great team work[,] will help anyone. . . . [A]lways johnny on the spot. . . . Great job in handling issues and doing what it takes to get the job done!"); id. Ex. W ("Communicates well with all associates when updates are happening and when the system will be down for a short time frame. . . . Tom is good at making sure he prioritizes his projects and incoming unexpected help with computers. . . . Tom will do what is asked of him at all times and works well with all associates.").) The only issues documented in the reviews related to attendance, not performance or attitude. Along those same lines, Clark testified in her deposition that Norring had never been given any type of warning, verbal or written, about his performance before his termination. (Clark Dep. at 14-15.)[8]

- Favorable review: In his deposition, Norring described a generally favorable performance review he received approximately one month before he was fired. (Norring Dep. at 85-88, 208.) There is no evidence in the record to contradict that testimony, as Pace has inexplicably lost that review. (Killeen Dep. at 21; Dwyer Aff. Ex. LL ("Pace Defendants are unaware of the location of the . . . 2015 performance review for the Plaintiff. Pace Defendants have conducted a reasonable search and inquiry for the document [and] [a]t this time, it has not been found.").)

---

[8] To be sure, there is contrary evidence in the record (see, e.g., First Clark Aff. Exs. D-E), but at this juncture the Court must view the record in the light most favorable to Norring.

- <u>Treatment of other employees:</u>  Pace focuses much of its argument on the fact Norring refused to remove the hat on the day he was discharged.  (<u>See</u> Def. Mem. in Supp. at 13-14, 16, 31; Rivers Aff. ¶¶ 16-17; <u>see also</u> Killeen Dep. at 58 ("Q: Do you believe [Norring's failure to remove the hat was] the real reason Pace terminated [him], because of the hat?  A: Absolutely.  100 percent.").)  Indeed, when responding to a request for information from the State of Minnesota after Norring requested unemployment benefits, the *only* reason given for his termination was "insubordination" due to his failure to follow the dress code on June 16, 2015.  (<u>See</u> Second Phillips Decl. (Doc. No. 46) Ex. 6.)  But evidence shows that other Pace employees sometimes wore hats in violation of the code (Killeen Aff. ¶ 5), and Killeen testified in his deposition that he was unaware of any other Pace employee being terminated for such conduct (Killeen Dep. at 58), testimony that was corroborated by Clark (Clark Dep. at 42 ("Q: Has Pace terminated any other employee for refusing to remove a hat in the office[?]  A:  No.")).

- <u>Changing reasons:</u>  Pace now asserts, among other things, that Norring's employment was terminated because he was a poor employee.  As noted above, however, Pace previously took the position that Norring was discharged *only* because of the hat incident on June 16, 2015.  (Second Phillips Decl. Ex. 6.)  Moreover, Pace now labels that incident as "insubordination," but the company apparently did not label it that way at the time of Norring's discharge.  Indeed, on June 16, 2015, Killeen filled out an "Employment Separation Form" for Norring, which Clark signed the following day.  The form lists several codes for the company to choose to document a termination of employment, including "Voluntary Quit," "Termination (no misconduct)," "Discharge

- 7 -

with misconduct," and "Discharge with gross misconduct." (Norring Decl. Ex. 1.) But in Norring's case, the box labeled "Termination (*no misconduct*)" has been circled (id. (emphasis added)), contrary to the position it now articulates. Perhaps more notably, someone at Pace *altered the form* after Norring's discharge, adding "remarks" providing that he was discharged for "insubordination, rudeness at work, unaproachable [*sic*]." (Second Phillips Decl. Ex. 14.) A jury may "properly infer a discriminatory motive from . . . belated changes" to documents in an employee's file. Zacharias v. Guardsmark, LLC, Civ. No. 12-174, 2013 WL 136240, at *7 (D. Minn. Jan. 10, 2013) (Kyle, J.). Moreover, Clark pointed the finger at Killeen for these alterations (Clark Dep. at 55-56), while Killeen denied adding anything to the form and testified that the handwriting did not look like his (Killeen Dep. at 64). This game of "hot potato" also is suggestive of discrimination. See, e.g., Zacharias, 2013 WL 136240, at *6 (collecting cases).

- Policy deviation: It is undisputed that Pace has a progressive discipline policy. In the case of misconduct, an employee is to first receive a verbal warning, then a written warning, and then suspension before being fired. (Clark Dep. at 66.) In this case, however, evidence suggests Pace did not follow its progressive discipline policy, choosing to discharge Norring without any warning. Further, Clark acknowledged in her deposition that refusing to remove a hat in the office is "not a very significant offense" (id. at 42) and that here, the "punishment of termination . . . would not fit the so-called crime" (id. at 67).[9]

---

[9] Clark later tried to change her testimony through an errata sheet, see Fed. R. Civ. P. 30(e), but this does not undermine the Court's consideration of her original testimony. See, e.g., Holverson

All told, Norring has pointed to sufficient evidence to create a genuine issue whether Pace's proffered reason for his termination is a pretext for discrimination. Accordingly, Pace's Motion will be denied with respect to this claim.

One issue remains outstanding, however. Although the Court has determined that Norring's discrimination claim survives for another day, Pace has argued that his *damages* are eviscerated by after-acquired evidence. "The after-acquired evidence doctrine applies when an employee is fired for an unlawful reason but the employer later learns of other conduct that, by itself, would have resulted in discharge had it come to the employer's attention." Smith v. AS Am., Inc., 829 F.3d 616, 625-26 (8th Cir. 2016). In other words, once an employer learns about wrongdoing that would have led to an employee's termination, the employer is not "require[d] . . . to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit." McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 362 (1995). Though no defense to liability, after-acquired evidence will limit a discrimination victim's potential back-pay award to the period between the alleged discrimination and the discovery of the after-acquired evidence. See id.; Smith, 829 F.3d at 626. Moreover, typically it will defeat *entirely* the potential equitable remedies of front pay and reinstatement: "It would be both inequitable and pointless to order the reinstatement of someone the employer would have

---

v. ThyssenKrupp Elevator Corp., Civ. No. 12-2765, 2014 WL 3573630, at *11-12 (D. Minn. July 18, 2014) (Montgomery, J.).

terminated, and will terminate, in any event and upon lawful grounds." McKennon, 513 U.S. at 361-62.

Here, Pace cites as after-acquired evidence its discovery on June 17, 2015, of Norring's hack into its computer systems, and it has submitted evidence that had Norring been employed at that time, it would have immediately discharged him. It argues that as a result of this after-acquired evidence, Norring's damages "would have been cut-off from June 17, 2015 onward – the date after he was terminated. [He] therefor[e] has no damages to recover." (Def. Mem. in Supp. at 40-41.)

On its face, this argument appears to have merit. Indeed, the Court finds especially telling the fact that *Norring has nowhere responded to it*.[10] More than a tacit admission, this failure to respond could be interpreted as "a waiver of th[e] argument" that after-acquired evidence does not limit Norring's recovery. Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 734-35 (8th Cir. 2009). But to so conclude would leave this case in the anomalous position of allowing Norring to proceed to trial on a claim for which he would be entitled to no recovery, save perhaps for nominal damages and/or attorneys' fees. Before addressing the issue, therefore, the Court will afford the

---

[10] To be sure, Norring denies being responsible for the intrusion, but that is not the issue. The issue is whether Pace "had a good-faith belief [he] . . . engaged in the alleged misconduct." Ketchum v. St. Cloud Hosp., 994 F. Supp. 2d 1012, 1020 (D. Minn. 2014) (Kyle, J.) (citing Wierman v. Casey's Gen. Stores, 638 F.3d 984, 995 (8th Cir. 2011)). And here, by not responding to Pace's argument, Norring has proffered nothing to suggest the company lacked a good-faith belief he was responsible for the intrusion into its systems. (See also Ransier Aff. ¶¶ 13-21 (noting that intruder first attempted to log in to Pace's network using *Norring's* credentials, and later accessed the system using information from accounts Norring had created and only he possessed); Clark Aff. ¶¶ 38-40.)

parties another attempt to resolve this case before Magistrate Judge Menendez and, absent a settlement, will require further briefing on this issue.[11]

Norring's Motion. Norring seeks summary judgment on Pace's counterclaim under the CFAA, arguing that the company has not "pled damage or loss" exceeding $5,000, as required under 18 U.S.C. § 1030. (Pl. Mem. in Supp. at 1.)[12] He notes that when Pace contacted the police following the intrusion into its systems, it advised that the "cost of the business down time due to the computer server and phone system being shut down" totaled $1,453.75. (First Phillips Decl. Ex. 1.) And, Clark testified in her deposition that this amounted to "the total costs of the business downtime due to the computer server and phone system being shut down." (Clark Dep. at 23.) According to Norring, this means the CFAA claim cannot stand.

But as Pace correctly notes, the damages discussed above related only to the company's "business down time" and *not* the costs incurred repairing the damage caused by the intrusion. See 18 U.S.C. § 1030(e)(11) (noting that "loss" includes "the cost of responding to an offense . . . and restoring the data, program, system, or information to its condition prior to the offense"). Indeed, Pace's letter to the police specifically noted that there were "other charges" involved, including "time that the corporate office spent investigating the breach of the computer system," as well as time expended by "everyone [at Pace] resetting their passwords." (First Phillips Decl. Ex. 1.) And Pace has submitted

---

[11] This case is currently on the Court's February 2017 trial calendar, but with discovery complete, the Court will likely hold a trial, if necessary, sooner than next February.

[12] The CFAA provides that a private right of action exists where unauthorized computer access results in "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I), (g).

evidence indicating that it indeed incurred costs restoring its systems that, in total, exceeded $5,000. (See Second Clark Aff. (Doc. No. 50) ¶¶ 3-14.) Accordingly, the Court cannot dismiss the CFAA counterclaim on this basis.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** as follows:

1. Norring's Motion for Partial Summary Judgment (Doc. No. 25) is **DENIED**;

2. Pace's Motion for Partial Summary Judgment (Doc. No. 28) is **GRANTED IN PART, DENIED IN PART,** and **RESERVED IN PART**. Specifically, the Motion is **GRANTED** as to Norring's entitlement claim (Count I of the Complaint), and that claim is **DISMISSED WITH PREJUDICE**. The Motion is **DENIED** with respect to Norring's discrimination claim (Count II of the Complaint). The Motion is **RESERVED** with respect to Pace's arguments regarding after-acquired evidence;

3. The hearing on the Motions, currently scheduled for October 19, 2016, is **CANCELED**; and

4. This matter is **REFERRED** to Magistrate Judge Menendez to conduct a second settlement conference at such time, and on such terms, as she shall direct.

Dated: October 14, 2016         s/Richard H. Kyle
                                RICHARD H. KYLE
                                United States District Judge